OPINION
Defendant-appellant, Corey M. McKinnon, appeals his conviction in the Columbiana County Common Pleas Court for rape.
On the evening of July 9, 1997, Patrolman Fred Flati of the East Liverpool Police Department responded to a report of a rape at the Heights Manor Apartment Building, located in the city of East Liverpool, Ohio. The alleged victim, Angel Orr (Orr), stated that she had been raped by somebody in the building whom she had known. She indicated that he gained entrance to her apartment under the pretense of using the phone. Patrolman Flati transported Orr to the East Liverpool City Hospital for treatment and examination. At the hospital, an emergency physician and attending nurse conducted a "rape kit" examination.
The next morning, Orr went to the East Liverpool Police Department. Detectives Darin Morgan and Donald Fickes interviewed Orr. Orr told them appellant was the person who had raped her.
The detectives located appellant at his apartment later that day. At first appellant agreed to follow the detectives to the police station for a statement. However, after calling his mother, he indicated that he would be getting an attorney and would not make any statements.
On January 15, 1998, a Columbiana County Grand Jury returned a secret indictment charging appellant with one count of rape in violation of R.C. 2907.02(A)(2), a felony of the first degree. At pretrial on February 12, 1998, the trial court ordered plaintiff-appellee, State of Ohio, represented by the Columbiana County Prosecutor's Office, to prepare copies of any transcripts of testimony or statements of witnesses for use at trial under Crim.R. 16.
Jury trial began on December 14, 1998, and concluded the following day. Orr repeatedly testified that appellant had "tore off" her clothes. The defense presented no evidence. After deliberations, the jury returned a guilty verdict.
On January 11, 1999, the trial court filed a judgment entry sentencing appellant to a ten-year term of imprisonment. The court also classified appellant as a sexual predator in accordance with the provisions of Revised Code Chapter 2950. Appellant filed a timely notice of appeal on February 5, 1999.
In preparation for appellant's sentencing hearing, his trial counsel reviewed the pre-sentence investigation report. Attached to the report was a report made by Lonnie L. Cooper (Cooper), a security guard working on the night of the incident at the apartment complex. In the report, Cooper states, "she had been raped. Then she told me, he made me take off all my clothes and do it on the floor."
On January 22, 1999 and pursuant to Crim.R. 33, appellant filed a motion for new trial alleging prosecutorial misconduct. Appellee filed a memorandum in opposition to appellant's motion on March 4, 1999. The motion was heard on March 5, 1999, and on March 8, 1999, the trial court filed a judgment entry overruling the motion.
Appellant sets forth nine assignments of error on appeal. However, we will only address appellant's third assignment of error since it is dispositive of this appeal.
An appellate court reviewing a trial court's resolution of a Brady
motion for a new trial utilizes a due process analysis rather than the abuse of discretion analysis used for motions for a new trial made pursuant to Crim.R. 33. State v. Johnston (1988), 39 Ohio St.3d 48, 59. The grounds for a new trial are set forth in Crim.R. 33(A)(1)-(6). Crim.R. 33 states in relevant part:
"(A) Grounds
 "A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
"* * *
 "(2) Misconduct of the * * * prosecuting attorney * * * [.]"
Crim.R. 16(B) controls when determining what evidence the prosecution must turn over to a defendant during discovery. While this section of the rule contains seven subsections, only the following two are relevant to the present case:
 "(B) Disclosure of evidence by the prosecuting attorney
"(1) Information subject to disclosure.
"* * *
 "(c) Documents and tangible objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant.
 "(f) Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. * * *"
In Brady v. Maryland (1963), 373 U.S. 83, the United States Supreme Court developed a rule of law, often referred to as the "Brady rule," which imposes upon a prosecutor a due process duty to disclose evidence favorable to the accused. Specifically, the court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. "Impeachment evidence, * * * as well as exculpatory evidence, falls within the Brady rule." U.S. v. Bagley
(1985), 473 U.S. 667, 676. In subsequent decisions, the court defined the parameters of the Brady rule by expanding on the concept of materiality.
In Bagley, the court held that the materiality test requires "a reasonable probability" that, had the disclosure been made, the "result of the proceeding would have been different." Bagley, 473 U.S. at 682. The court added, "A `reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id.
In Kyles v. Whitley (1995), 514 U.S. 419, the court addressed the issue again and noted as follows:
 "Four aspects of materiality under Bagley bear emphasis. Although the constitutional duty is triggered by the potential impact of favorable but undisclosed evidence, a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal * * *. Bagley's touchstone of materiality is a `reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A `reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression `undermines confidence in the outcome of the trial.' Bagley, 473 U.S., at 678, 105 S.Ct., at 3381.
 "The second aspect of Bagley materiality bearing emphasis here is that it is not a sufficiency of evidence test. A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict. One does not show a Brady violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.
 "Third, we note that * * * once a reviewing court applying Bagley has found constitutional error there is no need for further harmless-error review. * * *
 "The fourth and final aspect of Bagley materiality to be stressed here is its definition in terms of suppressed evidence considered collectively, not item by item. * * *" (Citations, quotations, and footnotes omitted.) Id. at 434-436.
In this case, we find that appellee suppressed evidence favorable to appellant and that the evidence was material to the issue of appellant's guilt. There is a reasonable probability that, had the disclosure been made, the result of the proceeding would have been different, a probability sufficient to undermine confidence in the outcome. Several factors influence our decision.
Appellee's case depended almost entirely on Orr's testimony. Without her testimony, there could have been no indictment and no evidence to take the case to the jury. Her personal credibility was potentially dispositive. The importance of her credibility was further highlighted by an entire lack of physical evidence connecting appellant to the alleged crime. Indeed, appellee recognized the importance of her credibility. Appellee presented its case with a theme stressing Orr's veracity. During trial and especially during closing argument, the prosecutor repeatedly argued to the jury how Orr had been entirely consistent when she recounted her version of the events to different persons.
Brady materiality plays an especially important role in cases where the prosecution's case rests primarily on the testimony of a certain witness. When the prosecution fails, in response to a request, to disclose impeachment evidence relating to the credibility of its key witness, the truth-finding process of trial is corrupted to some degree in all instances. But when "the `reliability of a given witness may well be determinative of guilt or innocence,'" Giglio v. United States (1972),405 U.S. 150, 154 (quoting Napue v. Illinois [1959], 360 U.S. 264, 269), and when the prosecution's case depends almost entirely on the testimony of a certain witness, 405 U.S. at 154, evidence tending to negate that witness' credibility simply may not be said to be immaterial.
In Giglio, the court ordered a new trial in a case in which a promise to a key witness was not disclosed to the jury. The court observed:
 "[W]ithout [Taliento's testimony] there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it.
 "For these reasons, the due process requirements enunciated in Napue and the other cases cited earlier require a new trial * * *." Giglio, 405 U.S. at 154-155.
In this case, had appellee disclosed the suppressed evidence, appellant would have been better able to challenge Orr's credibility. She testified that appellant had "tore off" her clothes. Clearly, Orr's statement to the security guard on the night of the incident is inconsistent with her testimony at trial and, thus, damages her credibility. The damage caused by the nondisclosure is further exacerbated by the fact that appellee presented no evidence of torn clothing.
Accordingly, appellant's third assignment of error has merit.
The decision of the trial court is hereby reversed, appellant's conviction vacated, and this case is remanded for a new trial according to law and consistent with this court's opinion.
Cox, J., concurs, Vukovich, J., concurs